CLERK'S OFFICE U.S. DIST COURT
AT DANVILLE, VA
FILED

AUG 16 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRADLEY MAXWELL,<br>    Plaintiff, | Civil Action No. 7:15-cv-00469 |
| v. | **MEMORANDUM OPINION** |
| HENRY PONTON, et al.,<br>    Defendants. | By:  Hon. Jackson L. Kiser<br>       Senior United States District Judge |

Bradley Maxwell, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming various staff of the Wallens Ridge State Prison ("WARSP") and Virginia Department of Corrections ("VDOC") as defendants. Plaintiff alleges that Defendants used, or permitted the use of, excessive force in violation of the Eighth Amendment and also violated due process guaranteed by the Fourteenth Amendment. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I find that the excessive force claims against Sgt. Bellamy, Correctional Officer ("C/O") C. Thomas, and C/O W. Thomas must be resolved by trial and that the defendants are entitled to qualified immunity and summary judgment for all other claims.

I.

During shakedowns in the A2 pod on December 13, 2014, defendant Sgt. Bellamy instructed defendant correctional officers C. Thomas and M. Thomas to search Plaintiff's cell, allegedly because Plaintiff recently had filed an administrative complaint against Sgt. Bellamy for threatening to assault Plaintiff.

C/O C. Thomas maintained control of Plaintiff with leg irons, handcuffs, and a handcuff strap while officers searched the cell. Plaintiff requested the presence of the Watch Commander

when the officers allegedly began to damage Plaintiff's legal documents, and C/O C. Thomas told Plaintiff to quiet down.

Plaintiff admittedly did not comply with C/O C. Thomas' order to be quiet. As a result, Sgt. Bellamy, C/O C. Thomas, and C/O W. Thomas allegedly pushed Plaintiff's face against the wall, "slammed" Plaintiff to the floor while wearing leg irons and handcuffs, twisted his arm, and twisted his testicles, all causing Plaintiff pain. During the take down to the floor, C/O W. Thomas allegedly asked Plaintiff repeatedly whether Plaintiff thought he "was tough" and "had enough." Sgt. Bellamy allegedly instructed C/O C. Thomas to claim that Plaintiff tried to assault Thomas. Plaintiff alleges he was peaceable, not combative, and did not attempt to pull away from C/O W. Thomas.

In contrast, Defendants allege that Plaintiff became verbally disruptive and attempted to pull away from an officer's control when the officers were searching the cell. Defendants acknowledge that they placed Plaintiff against the wall, but they allege Plaintiff did not cease his disruptive behavior and tried to assault defendant C/O C. Thomas. In response, C/Os C. Thomas and W. Thomas secured Plaintiff to the floor. Once Defendants believed Plaintiff had calmed down, Sgt. Bellamy instructed C/Os C. Thomas and W. Thomas to stand Plaintiff up, at which time non-defendant staff took control of Plaintiff. Defendants deny that Plaintiff ever asked for the Watch Commander, anyone told Plaintiff to "shut the fuck up," anyone slammed Plaintiff to the floor, anyone taunted Plaintiff or asked him if he had had enough, or anyone twisted Plaintiff's arms or testicles.

Defendant Lt. Carico arrived at Plaintiff's cell, and after consulting with Sgt. Bellamy, allegedly poured a cup of coffee all over Plaintiff's legal and personal property. The defendants placed Plaintiff in ambulatory restraints for eight to fourteen hours.[1]

Plaintiff complains that defendant Captain Brown was the Watch Commander who authorized Plaintiff's placement in ambulatory restraints despite not having seen the incident. Plaintiff complains that defendant Lt. Fleming, the institutional investigator, determined the evidence was inconclusive to establish the officers "assaulted" Plaintiff. Plaintiff further complains that defendant Ponton, a VDOC Regional Administrator, failed to supervise WARSP staff and did not conduct a real investigation into Plaintiff's letters and grievances about the incident.

Four related disciplinary charges were reported against Plaintiff. The first charge alleged that Plaintiff failed to comply with an order to stop kicking his cell door. Plaintiff challenged the charge during the disciplinary hearing, claiming Sgt. Bellamy never served the charge in accordance with VDOC policy. Plaintiff wanted defendant C. Franks, the disciplinary hearing officer ("DHO"), to watch the pod's video camera to prove Sgt. Bellamy did not serve the charge. Franks denied the request and deemed Plaintiff guilty of the charge, relying on Sgt. Bellamy's assertion that he served the charge.

The three remaining charges were made by three officers for three distinct events. C/O Pauley alleged that Plaintiff threatened him, C/O Baker alleged that Plaintiff incited others to withhold meal trays and kick cell doors, and C/O C. Thomas alleged that Plaintiff tried to assault him during the incident. Plaintiff similarly argued that Sgt. Bellamy did not serve three charges

---

[1] Plaintiff states in three submissions that he was in the ambulatory restraints for eight hours, twelve hours, and fourteen hours.

3

in accordance with VDOC policy and wanted defendant Hensley, the DHO of the second hearing, to watch the pod's video camera to prove Sgt. Bellamy did not serve the charges. Hensley denied the request and deemed Plaintiff guilty of the charge, relying on Sgt. Bellamy's assertion that he served the charges. As a result of all these conviction, Plaintiff was ordered to serve ninety days in segregation and pay $7.00 in fines.

## II.

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to

4

support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

A prisoner alleging excessive force in violation of the Eighth Amendment must show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986); see Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The subjective component encompasses such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 321. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid [Eighth Amendment] excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). Courts recognize that corrections officials must act

5

"in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Consequently, the court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

A dispute of a material fact exists as to whether Sgt. Bellamy, C/O C. Thomas, or C/O W. Thomas used excessive force. If Plaintiff indeed tried to escape from the physical custody of C/O C. Thomas in an attempt to interfere with officers' search of his cell, a good-faith effort to restore security would have been necessary. Viewing the evidence in the light most favorable to Plaintiff, however, the force allegedly used by defendants was malicious and sadistic and for the very purpose of causing harm. Slamming Plaintiff's face into the wall, slamming his body into the floor, and twisting his arms and testicles, all while he is wearing multiple restraints, cannot be deemed good-faith efforts to maintain or restore discipline merely because Plaintiff called for the Watch Commander. The pain Plaintiff suffered from the defendants purportedly slamming his face into the wall and twisting his arms and testicles, regardless of lasting physical injury, can be properly considered the injury. See Hudson v. McMillian, 503 U.S. 1, 13-14 (1992) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks. Indeed, were we to hold to the contrary, we might place various kinds of state-sponsored torture and abuse — of the kind ingeniously designed to cause pain but without a telltale 'significant injury' — entirely beyond the pale of the Constitution.") (Blackmun, J., concurring).

6

Accordingly, a jury trial is necessary to resolve whether Sgt. Bellamy, C/O C. Thomas, or C/O W. Thomas used excessive force in violation of the Eighth Amendment.

However, Captain Brown is entitled to qualified immunity and summary judgment. Plaintiff alleges that Captain Brown authorized staff to place Plaintiff in ambulatory restraints. Plaintiff acknowledges that Captain Brown did not observe what allegedly happened on December 13th, and Captain Brown ordered the restraints ostensibly based on only the defendants' version of facts. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (discussing deliberate indifference to conditions of confinement). Furthermore, Plaintiff offers no evidence that Captain Brown authorized ambulatory restraints for any purpose other than a good-faith attempt to maintain security based on hearing defendants' version of the alleged events. Moreover, Plaintiff fails to establish any objective injury from wearing ambulatory restraints. Accordingly, Captain Brown is entitled to qualified immunity and summary judgment.

## IV.

Defendants are entitled to summary judgment and qualified immunity for Plaintiff's due process claims. Plaintiff was required to spend ninety days in segregation, thirty days each for three institutional convictions. Plaintiff, however, fails to describe what conditions constitute the baseline comparison, the conditions he experienced in segregation for ninety days, or an atypical or significant hardship in relation to the ordinary incidents of prison life. See, e.g., Sandin v. Conner, 515 U.S. 472, 486 (1995); cf. Incumaa v. Stirling, 791 F.3d 517, 531 (4th Cir. 2015) ("Appellant's confinement to the SMU [for twenty years] is extraordinary in its duration and indefiniteness."). Absent the implication to a liberty interest, the due process protections afforded by Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974), including advanced notice and

7

the opportunity to present a defense, do not apply. A state official's failure to abide by a state's procedural rules and regulations does not, in and of itself, constitute a federal due process violation. See, e.g., Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Although Plaintiff alleges that defendants C/O Baker and C/O Pauley filed false institutional charges, there was "some evidence" in the record to support the convictions. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence"). Plaintiff's complains that Lt. Fleming deemed video footage of the December 13th incident inconclusive to prove staff attacked him, but that statement, without more, does not state a violation of a federal right. Also, Plaintiff has an adequate post-deprivation remedy under Virginia law for Lt. Carico's alleged intentional destruction of his personal and legal property.[2] See, e.g., Va. Code § 8.01-195.3; Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 538-39 (1981) (overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)). Accordingly, Defendants are entitled to qualified immunity and summary judgment for Plaintiff's due process claims.

V.

Plaintiff faults defendant Ponton for the conduct of WARSP staff and for not ruling in Plaintiff's favor after reviewing Plaintiff's administrative appeals. Supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in

---

[2] Plaintiff cannot state an Eighth Amendment claim about the alleged destruction of his legal and personal property.

8

execution of the defendant's policies or customs. See Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991) (finding that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs). Plaintiff wholly fails to establish Ponton's personal act or omission or deliberate indifference to any alleged deprivation of a federal right, and "[a] superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006)); see, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (discussing the deliberate indifference standard for supervisors); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (recognizing a plaintiff's basis for relief requires more than labels and conclusions). Accordingly, Ponton is entitled to qualified immunity and summary judgment.

## VI.

For the foregoing reasons, I deny Defendants' motion for summary judgment as to the excessive force claims against Sgt. Bellamy, C/O C. Thomas, and C/O W. Thomas, and I grant the motion as to all other claims.

ENTER: This 16th day of August, 2016.

*Jackson L. Kiser*
Senior United States District Judge